IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
ANDERSON/GREENWOOD DIVISION

| | |
|---|---|
| Frank Zuki Soliz, <br> a/k/a Frank Zuki Soliz, Jr., <br><br> Petitioner, <br><br> v. <br><br> Darlene Drew, Warden, <br><br> Respondent. | Case No. 8:11-cv-00562-MBS-JDA <br><br> **REPORT AND RECOMMENDATION** <br> **OF MAGISTRATE JUDGE** |

This matter is before the Court on Respondent's motion for summary judgment. [Doc. 41.] Petitioner, proceeding pro se, is a federal prisoner seeking relief pursuant to Title 28, United States Code, Section 2241. Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B) and Local Rule 73.02(B)(2)(c), D.S.C., this magistrate judge is authorized to review post-trial petitions for relief and submit findings and recommendations to the District Court.

Petitioner filed this Petition for writ of habeas corpus on March 4, 2011.[1] [Doc. 1.] On September 29, 2011, Respondent filed a motion for summary judgment. [Doc. 41.] On September 30, 2011, in accordance with an Order pursuant to *Roseboro v. Garrison*, 528 F.2d 309 (4th Cir.1975), Petitioner was advised to respond to the motion and of the possible consequences if he failed to adequately respond to Respondent's motion. [Doc. 42.] Petitioner filed a motion for extension of time [Doc. 45], which the Court granted,

---

[1] A prisoner's pleading is considered filed at the moment it is delivered to prison authorities for forwarding to the court. *See Houston v. Lack*, 487 U.S. 266, 270 (1988). In this case, construing the filing date in the light most favorable to Petitioner, this action was filed on March 4, 2011. [Doc. 1 at 9 (Petition dated March 4, 2011); Doc. 1-1 at 9 (Certificate of Service dated March 7, 2011); Doc. 1-3 (envelope stamped by correctional institution on March 7, 2011).]

making Petitioner's response due November 25, 2011 [Doc. 47]. Petitioner failed to respond.

Because Petitioner is proceeding pro se, the Court filed an Order on February 28, 2012, giving Plaintiff through March 19, 2012 to file his response to the motion for summary judgment. [Doc. 56.] On March 16, 2012, a motion to appoint counsel by Petitioner was filed. [Doc. 59.] On March 19, 2012, the Court denied Petitioner's motion to appoint counsel, reminded him of his duty to respond to the motion for summary judgment, and gave him a final opportunity to respond, extending the response deadline to March 26, 2012. [Doc. 60.] Petitioner was specifically advised that his failure to respond could result in dismissal of this action for failure to prosecute, pursuant to Rule 41(b) of the Federal Rules of Civil Procedure.

On March 29, 2012, after failing to receive a response from Petitioner, the Court filed a Report and Recommendation recommending the Petition be dismissed pursuant to Rule 41(b) of the Federal Rules of Civil Procedure for failure to prosecute. [Doc. 63.] On April 2, 2012, Petitioner filed a response.[2] [Doc. 66.] Accordingly, the Court vacated its Report and Recommendation of March 29, 2012 to consider the Petition and Respondent's motion for summary judgment. [Doc. 67.]

Having carefully considered the parties' submissions and the record in this case, the Court recommends Respondent's motion for summary judgment be granted and the Petition be denied.

---

[2] The envelope in which Petitioner sent his response was postmarked March 28, 2012. [Doc. 66-1.]

## BACKGROUND

At the time he filed the Petition, Petitioner was incarcerated at the Federal Correctional Institution ("FCI") located in Bennettsville, South Carolina. [Doc. 1 at 2; Doc. 41-1 (history of admissions and releases).] Petitioner is currently incarcerated at the FCI located in El Reno, Oklahoma. [Doc. 18 (latest notice of change of address); Doc. 41-1.] Petitioner brings this action alleging that disciplinary sanctions were imposed based on erroneous disciplinary hearing findings. [Doc. 1 at 8.] Petitioner seeks full exoneration and restoration of good credit time. [*Id.* at 9.]

As to the incident leading to the disciplinary hearing, Petitioner alleges that on July 18, 2009 a large group of inmates at FCI Bastrop, Texas, charged the Texas Syndicate Inmates and began assaulting them on the outside recreation yard. [Doc. 1-1 at 2.] The prison staff was able to subdue the fight by ordering everyone not directly involved in the fight, including Petitioner, to return to the indoor gym. [*Id.*] On that same day, Petitioner contends he was stripped, searched, and fully examined for physical evidence that he was involved in the fight, e.g., cuts, bruises, or any visible physical stress on his hands, back, head, and chest area. [*Id.*] Petitioner further contends that on August 24, 2009 an incident report was prepared, charging Petitioner with assault stemming from the July 18, 2009 fight. [*Id.* at 2.] Petitioner was placed in the Special Housing Unit ("SHU"), and following a hearing before a Discipline Hearing Officer ("DHO"), Petitioner contends he was severely punished without an evidentiary basis. [*Id.*] Petitioner alleges he is "actually innocent" of the charges that resulted in the forfeiture of 40 days of earned good credit time and 21 days of vested good credit time; the loss of 180 days of visitation and commissary privileges; 60

days of segregation time; and a disciplinary transfer. [*Id.* at 4.] Petitioner alleges he filed this Petition after exhausting his administrative remedies. [*Id.*]

## APPLICABLE LAW

**Liberal Construction of Pro Se Petition**

Petitioner brought this action *pro se*, which requires the Court to liberally construe his pleadings. *Estelle v. Gamble*, 429 U.S. 97, 106 (1976); *Haines v. Kerner*, 404 U.S. 519, 520 (1972) (per curiam); *Loe v. Armistead*, 582 F.2d 1291, 1295 (4th Cir. 1978); *Gordon v. Leeke*, 574 F.2d 1147, 1151 (4th Cir. 1978). Pro se pleadings are held to a less stringent standard than those drafted by attorneys. *Haines*, 404 U.S. at 520. Even under this less stringent standard, however, the pro se petition is still subject to summary dismissal. *Id.* at 520–21. The mandated liberal construction means only that if the court can reasonably read the pleadings to state a valid claim on which the petitioner could prevail, it should do so. *Barnett v. Hargett*, 174 F.3d 1128, 1133 (10th Cir. 1999). A court may not construct the petitioner's legal arguments for him. *Small v. Endicott*, 998 F.2d 411, 417–18 (7th Cir. 1993). Nor should a court "conjure up questions never squarely presented." *Beaudett v. City of Hampton*, 775 F.2d 1274, 1278 (4th Cir. 1985).

**Summary Judgment Standard**

Rule 56 states, as to a party who has moved for summary judgment:

> The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.

Fed. R. Civ. P. 56(a). A fact is "material" if proof of its existence or non-existence would affect disposition of the case under applicable law. *Anderson v. Liberty Lobby, Inc.*, 477

4

U.S. 242, 248 (1986). An issue of material fact is "genuine" if the evidence offered is such that a reasonable jury might return a verdict for the non-movant. *Id.* at 257. When determining whether a genuine issue has been raised, the court must construe all inferences and ambiguities against the movant and in favor of the non-moving party. *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962).

The party seeking summary judgment shoulders the initial burden of demonstrating to the court that there is no genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once the movant has made this threshold demonstration, the non-moving party, to survive the motion for summary judgment, may not rest on the allegations averred in his pleadings. *Id.* at 324. Rather, the non-moving party must demonstrate specific, material facts exist that give rise to a genuine issue. *Id.* Under this standard, the existence of a mere scintilla of evidence in support of the non-movant's position is insufficient to withstand the summary judgment motion. *Anderson,* 477 U.S. at 252. Likewise, conclusory allegations or denials, without more, are insufficient to preclude granting the summary judgment motion. *Ross v. Commc'ns Satellite Corp.*, 759 F.2d 355, 365 (4th Cir. 1985), *overruled on other grounds*, 490 U.S. 228 (1989). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Anderson*, 477 U.S. at 248. Further, Rule 56 provides in pertinent part:

> A party asserting that a fact cannot be or is genuinely disputed must support the assertion by:
>
> > (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored

> information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or
>
> (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

Fed. R. Civ. P. 56(c)(1). Accordingly, when Rule 56(c) has shifted the burden of proof to the non-movant, he must produce existence of a factual dispute on every element essential to his action that he bears the burden of adducing at a trial on the merits.

**Habeas Corpus**

Habeas corpus proceedings are the proper mechanism for a prisoner to challenge the legality or duration of his custody. *See Preiser v. Rodriguez*, 411 U.S. 475, 484 (1973). The primary means of attacking the validity of a federal conviction and sentence is through a motion pursuant to 28 U.S.C. § 2255, while a petition for habeas corpus under § 2241 is the proper method to challenge the computation or execution of a federal sentence. *See United States v. Little*, 392 F.3d 671, 678–79 (4th Cir. 2004); *United States v. Miller*, 871 F.2d 488, 489–90 (4th Cir. 1989) (distinguishing between attacks on the "computation and execution of the sentence [and] the sentence itself"). A petition pursuant to § 2241 challenging the execution of a federal prisoner's sentence generally addresses "such matters as the administration of parole, computation of a prisoner's sentence by prison officials, prison disciplinary actions, prison transfers, type of detention and prison conditions." *Jiminian v. Nash*, 245 F.3d 144, 146 (2d Cir. 2001) (citing *Chambers v. United States*, 106 F.3d 472, 474–75 (2d Cir. 1997)).

**DISCUSSION**

**Jurisdiction**

Respondent argues this Court lacks jurisdiction to hear the Petition because Respondent is no longer a proper respondent. [Doc 41 at 2.] Specifically, Respondent contends the only proper respondent in a habeas petition is the "person having custody of the person detained." [*Id.* at 3 (quoting *Rumsfeld v. Padilla*, 542 U.S. 426, 434–35 (2004)).] Further, Respondent argues she was the proper respondent at the time the Petition was filed, but because Petitioner was transferred from FCI Bennettsville, Respondent cannot give effect to any relief ordered, as she no longer has custody of Petitioner. [*Id.* at 5.] Accordingly, Respondent argues this case should be transferred to the District of Oklahoma and H.A. Ledezma substituted as the respondent. [*Id.*] The Court disagrees.

As one district court in the District of South Carolina has recently explained, a habeas petitioner's subsequent transfer from the district in which his habeas petition was properly filed does not defeat the filing court's jurisdiction to hear the petition. *Warren v. United States of America, Inc.*, No. 3:10-1245, 2011 WL 4435655, at *2–5 (D.S.C. Sept. 23, 2011) (unpublished opinion). In *Rumsfeld*, the United States Supreme Court stated the word "jurisdiction" in 28 U.S.C. § 2241(a) was not used "in the sense of subject-matter jurisdiction of the District Court." 542 U.S. at 434 n.7. The district court in *Warren* observed that this distinction is crucial because defects in subject matter jurisdiction may not be waived or forfeited but other types of jurisdictional defects, such as lack of personal jurisdiction or venue, may be waived. 2011 WL 4435655, at *3 (quoting *Moore v. Olson*, 368 F.3d 757, 759 (7th Cir. 2004)). Further, the United States Court of Appeals for the Fourth Circuit has implied the "jurisdiction" restriction in § 2241 is akin to personal jurisdiction or venue and held that, because § 2241 does not limit the subject matter

7

jurisdiction of district courts, "any challenge to habeas proceedings based on [the jurisdiction restriction] in § 2241(a) is waived if not timely asserted." *Kanai v. McHugh*, 638 F.3d 251, 258 (4th Cir. 2011).

Moreover, as the district court in *Warren* noted, the Fourth Circuit has previously held that in a § 2241 habeas action "[j]urisdiction is determined at the time an action is filed," meaning that "subsequent transfers of prisoners outside the jurisdiction in which they filed actions do not defeat personal jurisdiction." *Warren*, 2011 WL 4435655, at *3 (quoting *United States v. Edwards*, 27 F.3d 564, 1994 WL 285462 (4th Cir. 1994) (per curiam) (unpublished table decision)). The district court observed other circuits have similarly held habeas jurisdiction is not lost when a prisoner is transferred outside the district in which he filed his petition. *Id.* (citing *Mujahid v. Daniels*, 413 F.3d 991 (9th Cir. 2005) ("[J]urisdiction attaches on the initial filing for habeas corpus relief, and is not destroyed by a transfer of the petitioner and the accompanying custodial change."); *Moore*, 368 F.3d at 758 ("A prisoner transferred while litigation is pending need not re-file in the new district."); *White v. Lamanna*, 42 F. App'x 670, 2002 WL 857739 (6th Cir. 2002) ("A district court's jurisdiction generally is not defeated when a prisoner who has filed a § 2241 petition while present in the district is involuntarily removed from the district while the case is pending."); *Lee v. Wetzel*, 244 F.3d 370, 375 n.5 (5th Cir. 2001) (holding that dismissing the case for lack of jurisdiction "does not amount to an empty formality because jurisdiction over [the petitioner's] habeas corpus petition attached at the time of filing when he was incarcerated in another judicial district")).

The district court continued explaining the implications of *Rumsfeld* by considering a statement that is essentially dicta in *Rumsfeld*:[3]

> Attempting to reconcile its earlier decision in *Ex parte Endo*, 323 U.S. 283 . . . (1944), the Court noted that "when the Government moves a habeas petitioner after she properly files a petition naming her immediate custodian, the District Court retains jurisdiction and may direct the writ to any respondent *within its jurisdiction who has legal authority to effectuate the prisoner's release*." *Rumsfeld*, 542 U.S. at 441 (emphasis added). Several district courts have read this language to mean that when an incarcerated habeas prisoner is transferred to another state, the district court can no longer entertain the petition because it lacks personal jurisdiction over the prisoner's new immediate custodian. *See Smith v. Owen*, 2011 WL 743094 (D.S.C. January 21, 2011) . . . ; *Anderson v. Drew*, 2009 WL 1458214 (D.S.C. May 21, 2009) . . . ; *Neal v. Warden of FCI-Florence*, 2009 WL 2072833 (E.D. Va. July 13, 2009) . . . .
>
> However, this Court is more persuaded by the majority of courts that have not construed *Rumsfeld* as divesting a district court of habeas jurisdiction whenever a prisoner is transferred out of the district. *See, e.g.*, *Neal v. Drew*, 2009 WL 6254710 (D.S.C. November 5, 2009); *Elcock v. Streiff*, 554 F. Supp. 2d 1279, 1282 (S.D. Ala. 2008) . . . ; *Colts v. U.S. Parole Comm'n*, 531 F. Supp. 2d 8, 11 (D.D.C. 2008) . . . ; *Boone v. Menifee*, 387 F. Supp. 2d 338, 344 (S.D.N.Y. 2005) . . . .
>
> It is not essential that a petitioner's new custodian be within the personal jurisdiction of the district court. The Court in *Rumsfeld* emphasized that only a prisoner's immediate custodian may be properly named as the respondent in the initial filing of a habeas petition, discussing and rejecting the proposition that any person with "legal control" over the petitioner's incarceration may be named as the respondent. Yet in discussing the power of a district court which initially acquires proper jurisdiction to act after the prisoner is moved,

---

[3] The statement in *Rumsfeld* is dicta because the petitioner in *Rumsfeld* had initially filed in the wrong district, but the statement addresses cases where the petitioner initially files in the correct district, i.e., in the district where the proper respondent was located. *See Warren*, 2011 WL 4435655, at *4 n.3.

> the Court stated that the district court may direct the writ to "*any* respondent within its jurisdiction who has *the legal authority* to effectuate the prisoner's release." *Rumsfeld*, 542 U.S. at 441 (emphasis added). This broad language implies that the prisoner's immediate custodian need not be within the Court's jurisdiction as long as someone with "legal authority" over the prisoner's incarceration is subject to the Court's jurisdiction. In this case, the Bureau of Prisons maintains a "continuous and systematic" presence within the district by operating multiple federal prisons, which is more than sufficient to give rise to general personal jurisdiction. *See Helicopteros Nacionales de Columbia v. Hall*, 466 U.S. 408, 414–15, 104 S.Ct. 1868, 80 L.Ed.2d 404 (1984). Because the Bureau of Prisons is within the personal jurisdiction of this Court and is able to grant Petitioner any relief this Court may order, this Court properly retains jurisdiction.

*Warren*, 2011 WL 4435655, at *4–5. The district court concluded that it acquired jurisdiction over the petition before it when the petitioner filed in the correct district and named the correct respondent and that the petitioner's subsequent transfer to an institution in another district could not destroy the district court's jurisdiction; therefore, the district court held it could fully adjudicate the action. *Id.* at *5. Similarly, in this case, Petitioner correctly filed in the District of South Carolina and correctly named the warden of FCI Bennettsville as Respondent because at the time he filed the Petition he was incarcerated at FCI Bennettsville. Consequently, the Court acquired jurisdiction over the Petition when it was filed and retains jurisdiction over the Petition even though Petitioner was subsequently transferred to a facility outside the District of South Carolina.

**Merits of Claim**[4]

Petitioner argues (1) he is actually innocent of the disciplinary charges that resulted in the loss of good credit time, (2) the DHO abused his discretion when he found Petitioner guilty of being involved in the fight, and (3) the DHO was not impartial when he gave greater weight to the allegations made by prison staff. [Doc. 1-1 at 4–8.] Specifically, Petitioner contends the FBI exonerated him; the DHO would not allow Petitioner's evidence, which demonstrated Petitioner was not involved in the fight; and the incident report was fabricated and/or based on confidential informants' testimony that the FBI found not credible. [*Id.*] Petitioner argues he was therefore denied due process in the DHO hearing. [*Id.*]

### *Petitioner's DHO Hearing*

According to the incident report, at approximately 12:04 p.m. on July 18, 2009, around 35 inmates associated with various factions of the Tango gang simultaneously assaulted seven associates of the Texas Syndicate prison gang. [Doc. 1-2 at 1.] Witnesses stated Petitioner kicked and punched four inmates, who were seriously injured; three of the inmates required emergency medical treatment. [*Id.*] After the incident, all

---

[4] Although 28 U.S.C. § 2241 does not contain a statutory exhaustion requirement, courts consistently require prisoners to exhaust their administrative remedies prior to seeking habeas review under § 2241. *See Braden v. 30th Judicial Circuit Court*, 410 U.S. 484, 490–91 (1973) (requiring exhaustion in a § 2241 matter); *Timms v. Johns*, 627 F.3d 525 (4th Cir. 2010) (noting courts require "exhaustion of alternative remedies before a prisoner can seek federal habeas relief" (internal quotation marks omitted)). Exhaustion allows prison officials to develop a factual record and "an opportunity to resolve disputes concerning the exercise of their responsibilities before being haled into court." *Jones v. Bock*, 549 U.S. 199, 204 (2007). Any arguments not advanced at each step of the administrative appeal are procedurally defaulted. *See Moffat v. Broyles*, 288 F.3d 978, 981–82 (7th Cir. 2002). Moreover, if a prisoner cannot obtain an administrative remedy because of his failure to timely appeal at the administrative level, then the prisoner has procedurally defaulted his § 2241 claim, *see Moscato v. Fed. Bureau of Prisons*, 98 F.3d 757, 760 (3rd Cir. 1996), *cited with approval in Watkins v. Compton*, 126 F. App'x 621, 622 (4th Cir. 2005); *Nigro v. Sullivan*, 40 F.3d 990, 997 (9th Cir. 1994), unless the prisoner can demonstrate cause and prejudice for the failure, *Moscato*, 98 F.3d at 761. Here, Respondent acknowledges Petitioner exhausted the claims advanced in the Petition.

11

inmates on the recreation yard were placed in the gymnasium and then were videotaped leaving the gymnasium; the videotape revealed Petitioner was on the recreation yard at the time of the assault.[5] [*Id.*] Petitioner was charged with violating Code 101, Assaulting Any Person. [*Id.*] The incident report was written on August 24, 2009, but it was suspended pending referral to the FBI for possible criminal prosecution. [Doc. 41-4; *see* Doc. 1-2 at 1.] The report was released and delivered to Petitioner on August 29, 2009. [Doc. 41-4; *see* Doc. 1-2 at 1.]

The matter was referred to the Unit Discipline Committee ("UDC") for processing. [Doc 41-4.] The UDC hearing was conducted on August 31, 2009. [Doc. 1-2 at 1.] At the UDC hearing, Petitioner stated he was not guilty and that he was on the weight pile at the time of the incident. [*Id.*] Because of the serious nature of the charges, the UDC referred the matter to a DHO. [*Id.*] Petitioner was advised of his rights before the DHO. [*Id.* at 2, 4–5.] Petitioner indicated he wanted a staff representative and provided the name of the person he requested. [*Id.* at 4.] Petitioner listed three inmate witnesses he contended would all corroborate his claim that he was on the weight pile and not involved in the incident. [*Id.*]

The DHO hearing was held on September 10, 2009. [Doc. 41-5 at 1.] Petitioner's requested staff representative appeared and made a statement. [*Id.*] Petitioner was allowed to make a statement; he denied the charge and stated (1) he was on the weight pile when the incident occurred and he saw it happening, (2) he was not a Tango and did not associate with them, and (3) anyone who identified him as a participant was lying to

---

[5] The incident apparently occurred on the recreation yard. [Doc. 1-1 at 2; Doc. 41-5 at 3–4.]

12

cover up their own actions. [*Id.* at 1–2, 4.]  Two of Petitioner's requested witnesses were called; one testified he saw Petitioner on the weight pile but could not remember if it was during the incident or before, and the other witnesses testified he saw Petitioner on the weight pile during the incident.  [*Id.* at 4.]  The third witness was not called.[6]  [*See id.*]

The DHO was also presented with evidence that Petitioner was involved in the incident.  [*Id.* at 2–4.]  Specifically, confidential informants provided statements that they witnessed Petitioner punching and kicking other inmates, who received injuries consistent with being punched and kicked.  [*Id.*]  The confidential informants' statements were corroborated by the admission of another inmate and an eyewitness statement.  [*Id.* at 4.]

After consideration of all the evidence, the DHO found the greater weight of the evidence indicated Petitioner committed the prohibited act of assaulting any person.  [*Id.*] The DHO imposed a variety of sanctions for the offense, including disallowance of 40 days good conduct time, forfeiture of 21 days non-vested good conduct time, 60 days disciplinary segregation, and loss of commissary and visiting privileges for 180 days.  [*Id.* at 5.]  The DHO also recommended a disciplinary transfer.  [*Id.*]  A copy of the DHO's written decision was delivered to Plaintiff on September 22, 2009.  [*Id.*]  Plaintiff appealed through the administrative remedy process, but the disciplinary action and sanctions were upheld.  [Doc. 41-3.]

---

[6] *See infra* note 7.

*Analysis*

Certain procedural safeguards apply when loss of statutory good time credit is at issue. See Wolff v. McDonnell, 418 U.S. 539, 557 (1974). In *Wolff*, the Supreme Court set out the requirements for due process in prison disciplinary hearings:

1. Giving the prisoner written notice of the charges at least 24 hours before he appears for his disciplinary hearing;

2. Providing the prisoner a written statement by the fact finder(s) as to the evidence relied on and reasons for the disciplinary action;

3. Allowing the prisoner to call witnesses and present documentary evidence in his defense, when permitting him to do so will not be an undue hazard to institutional safety or correctional goals;

4. Permitting the prisoner the aid of a fellow prisoner, or if that is forbidden, aid from staff or a competent inmate designated by staff, if the prisoner is illiterate or the complexity of the issue makes it unlikely that the prisoner will be able to collect and present the evidence necessary for an adequate comprehension of the case; and

5. Providing impartial fact finders.

*Id.* at 563–76. Additionally, DHO findings revoking a prisoner's good time credit must be supported by "some evidence in the record." *Superintendent, Mass. Corr. Inst. v. Hill*, 472 U.S. 445, 454–56 (1985). In *Hill*, the Supreme Court declined to adopt a more stringent evidentiary standard as a constitutional requirement, stating:

> Prison disciplinary proceedings take place in a highly charged atmosphere, and prison administrators must often act swiftly on the basis of evidence that might be insufficient in less exigent circumstances. The fundamental fairness guaranteed by the Due Process Clause does not require courts to set aside decisions of prison administrators that have some basis in fact.

*Id.* at 456. The "some evidence" standard is a lenient one, requiring no more than "a modicum of evidence," and is met if there is any evidence in the record that could support

14

the decision. *Id.* at 455–56; *see also Baker v. Lyles*, 904 F.2d 925, 932 (4th Cir. 1990) ("Nor does [requiring some evidentiary basis to revoke good time credits] imply that a disciplinary board's factual findings or decisions with respect to appropriate punishment are subject to second-guessing upon review."). This standard requires "only that the decision not be arbitrary or without support in the record." *McPherson v. McBride*, 188 F.3d 784, 786 (7th Cir. 1999). As the Court noted in *Hill*:

> Ascertaining whether this standard is satisfied does not require examination of the entire record, independent assessment of the credibility of witnesses or weighing of the evidence. Instead, the relevant question is whether there is any evidence in the record that could support the conclusion reached by the disciplinary board.

472 U.S. at 455–56.

A review of the record reveals that the due process requirements stated in *Wolff* were observed in this case. Petitioner was provided with written notice of the charges more than 24 hours before a hearing on the charges [Doc. 1-2] and was provided a copy of the DHO report that includes information about the evidence relied on and the reasons for the disciplinary action [Doc. 41-5]. Before the hearing, Petitioner was advised in writing of his right to call witnesses, to present documentary evidence, and to have a staff representative at the hearing; Petitioner signed the forms to indicate he had been advised of his rights. [Doc. 1-2 at 2, 4.] At the DHO hearing, a staff representative provided a statement and two inmate witnesses testified on Petitioner's behalf.[7] [Doc. 41-5 at 1, 4.]

---

[7] Petitioner actually designated three inmate witnesses to testify on his behalf: Nobel Landry ("Landry"), Chris Hay ("Hay"), and Frank Espinosa ("Espinosa"). [Doc. 1-2 at 4.] Only two of the witnesses were called; in his report, the DHO referred to the testimony of Hague (or "Hay," as Petitioner lists him) and Espinosa, but Landry does not appear to have testified. [Doc. 41-5 at 4.] To the extent Petitioner argues the DHO's failure to call Landry was a violation of due process, Petitioner has failed to identify what Landry's testimony would have added, such as how Landry's testimony differed from Hay's and Espinosa's. Moreover,

As to the fifth requirement stated in *Wolff*, although Petitioner alleges "[t]he DHO was not impartial when it gave greater weight to allegations made by the Institution Staff" [Doc. 1-1 at 5], Petitioner's conclusory allegations alone are insufficient to preclude granting summary judgment to Respondent. *See Ross*, 759 F.2d at 365. Petitioner has failed to provide any evidence that the DHO was not impartial. Rather, the record establishes the DHO conducted a hearing and examined the record, including the evidence put forth by Petitioner. [Doc. 41-5 at 2–5 (indicating the DHO considered the written statement of Lt. Gambol from an investigation of the incident; the written statement of Mr. Salazar, an eyewitness to the incident who identified inmates involved; the testimony of Petitioner; the testimony of two of Petitioner's witnesses and the statement of Petitioner's inmate representative; and the testimony of confidential informants[8] positively identifying Petitioner as a participant in the incident).] Accordingly, Petitioner was afforded all due process required under *Wolff*.

As previously stated, judicial review of prison disciplinary actions is limited solely to a determination of whether there is *some evidence* in the record to support the DHO's decision. Here, there is some evidence in the record to support the DHO's decision that Petitioner was involved in the incident as alleged. For example, a videotape showed

---

in listing the witnesses he wished to call at the hearing, Petitioner indicated Landry's testimony was consistent with Hay's and Espinosa's. [Doc. 1-2 at 4.] Therefore, Petitioner has failed to demonstrate a due process violation based on the DHO's failure to call a witness who Petitioner had indicated would provide cumulative testimony.

[8] Petitioner also claims the FBI found the confidential informants were "not credible" [Doc. 1-1 at 7]; however, Petitioner has failed to provide any evidence in support of this statement. Upon review of the record, the Court found no indication that the confidential informants were ever found to be not credible. To the contrary, the DHO found the confidential informants to be credible because their testimony was corroborated by the admissions of another inmate, an eyewitness statement, and injuries to the inmates the confidential informants stated Plaintiff assaulted consistent with the type of assault the confidential informants stated Plaintiff committed. [Doc. 41-5 at 4.]

Plaintiff was on the recreation yard, where the incident occurred, at the time of the incident [Doc. 1-2 at 1]; confidential informants identified Petitioner as a participant and described Petitioner's participation in detail [Doc. 41-5 at 2, 4]; and another inmate's admission and an eyewitness statement corroborated the confidential informants' statements [*id.* at 4]. Therefore, the evidentiary standard of *Hill* is satisfied in this case.

Finally, to the extent Petitioner alleges he is entitled to relief based on a claim of actual innocence, a claim of actual innocence is not a basis for federal habeas corpus relief. See *Dowthitt v. Johnson*, 230 F.3d 733, 741 (5th Cir. 2000). "The due process clause does not require later consideration of evidence that could have been but was not presented during a prison disciplinary proceeding." *Jones v. McCaughtry*, 6 F. App'x 371, 372–73 (7th Cir. 2001) (citing *McPherson*, 188 F.3d at 786–87). Instead, courts look only to whether a prisoner received the procedural protections due under the Constitution, and "subsequent tender of additional evidence is irrelevant to [the] due process determination." *Id.* at 373 (citing *McPherson*, 188 F.3d at 787). As previously stated, Petitioner was afforded the due process required under *Wolff*, and some evidence supports the DHO's decision; accordingly, Respondent's motion for summary judgment should be granted, and the Petition should be denied.

**RECOMMENDATION**

Wherefore, based upon the foregoing, the Court recommends that Respondent's motion for summary judgment be GRANTED and the Petition be DENIED.

IT IS SO RECOMMENDED.

s/Jacquelyn D. Austin<br>
United States Magistrate Judge

April 16, 2012
Greenville, South Carolina